IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

HEIMO RIEDEL,

      Plaintiff,

v.                                                                            Civil Action No. 1:22-CV-155 (Kleeh)

WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS, for and on behalf of
WEST VIRGINIA UNIVERSITY, and
MICHAEL SCHALLER, Ph.D., Individually,
      Defendants.

## DEFENDANTS' MOTION TO ENFORCE SETTLEMENT

AND NOW, the Defendants, the West Virginia University Board of Governors ("WVUBOG") and Michael Schaller ("Dr. Schaller") (collectively referred to herein as the "Defendants"), by and through their undersigned counsel, respectfully move this Honorable Court to enforce a settlement entered into between Heimo Riedel ("Plaintiff"), and in support thereof, avers as follows:

**I.**    **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

This matter arises from the non-renewal of the Plaintiff's contract with his former, employer, West Virginia University ("WVU"). Prior to his non-renewal, the Plaintiff was a tenured biochemistry professor at WVU. In this action, the Plaintiff has asserted claims against WVUBOG and his former chairperson, Dr. Schaller, that he was wrongfully terminated in violation of his due process rights and in retaliation for the numerous grievances he filed during his employment. Additionally, the Plaintiff also asserted a claim for wrongful termination due to his age under the West Virginia Human Rights Act ("WVHRA"), as well as a claim for negligence and one for abuse of process. *See generally*, Second Amended Compl. (ECF No. 1).

The Plaintiff filed his initial Complaint in this matter in the Circuit Court of Monongalia County, West Virginia, on June 28, 2019. On May 3, 2022, by Agreed Order, the Plaintiff was granted leave and filed his First Amended Complaint on May 11, 2022. On June 6, 2022, WVUBOG filed a motion to dismiss Plaintiff's First Amended Complaint. A hearing was held on WVUBOG's motion on September 19, 2022, at which time the Circuit Court granted, in part, and denied, in part, WVUBOG's motion and granted Plaintiff leave to file a Second Amended Complaint.

The Plaintiff filed his Second Amended Complaint on December 6, 2022, at which time he added Dr. Schaller as a named defendant and asserted claims for: (1) violation of due process rights under the West Virginia Constitution – wrongful actual and/or constructive termination; (2) retaliatory discharge actual and/or constructive in violation of statute; (3) wrongful discharge (actual and/or constructive) in violation of the WVHRA; (4) abuse of process; (5) deprivation of constitutional rights under color of state law – U.S.C. §1983; and (6) negligence. Based upon the newly asserted federal claims, WVUBOG timely removed this action to federal court. See ECF No. 1. A Scheduling Order was entered in this matter on February 2, 2023 (ECF No. 8), which was later amended on June 6, 2023 (ECF No. 18) and on February 13, 2024 (ECF No. 32).

Pursuant to the June 6, 2023 amended scheduling order directing that the parties mediate the matter, (ECF No. 18), the parties agreed to utilize Stephen J. Dalesio to serve as mediator in this matter and notified this Court accordingly. (ECF No. 20). Mediation was ultimately held in the case on March 29, 2024, during which both parties and their respective counsel – all people with settlement authority – were present. During the mediation, after significant back and forth negotiation, the parties eventually agreed to attempt to reach an agreement via a mediator's number. Such a number was provided to each of the parties during the mediation on March 29,

2024, and the Defendants expressed agreement to it. Though the Plaintiff did not express formal agreement or disagreement to the mediator's number that particular day, the parties agreed to continue their discussions thereafter with the further assistance of the mediator to see if a complete agreement could be reached.

Consistent with that plan, communications continued between the parties and the mediator after March 29, 2024 regarding possible resolution of the matter. On April 8, 2024, counsel for Defendants was informed by the mediator that Plaintiff had accepted the mediator's number, and a settlement had been reached. Later that same day, Mediator Dalesio reached out to counsel for the parties to confirm the terms of the settlement, to which counsel for Plaintiff and counsel for Defendants both explicitly confirmed in writing. *See* April 8-9, 2024 email exchange RE: Heimo Riedel v. WVUBOG Mediation, attached hereto as **Exhibit 1**. On April 11, 2024, following a confirmation filing/communication from Mediator Dalesio to the Court that a settlement had been reached, the Court entered an Order dismissing the case and striking it from the docket, subject to reopening on Motion of any party, and for good cause shown, within 90 days. (ECF No. 48).

In the subsequent weeks, pursuant to the terms of the settlement, counsel for Defendants prepared and provided to counsel for Plaintiff a complete settlement agreement on April 24, 2024 including language setting forth the agreed-upon core terms as well as associated ancillary language. *See* April 24, 2024 email "Riedel/WVU – Draft Settlement Agreement," attached hereto as **Exhibit 2**.

While still under the expectation that the parties were working together to get the full settlement agreement signed, like they do in the normal course, counsel for the Defendant was informed by the mediator on June 13, 2024 that Plaintiff was refusing to sign the settlement agreement. Upon the mediator's recommendation, counsel for the Defendant reached out to

3

Plaintiff's counsel to ascertain the reason for Plaintiff's supposed refusal to execute the agreement. *See* June 13, 2024 email "Riedel Status," attached hereto as **Exhibit 3**. The Plaintiff's attorney contacted Counsel for the Defendant in response and advised that the deal was not dead, but that it would likely be four (4) to six (6) weeks before he could obtain Plaintiff's approval on account of him being in Germany. Given this representation, counsel for Defendants agreed to wait the additional time for Plaintiff to execute the agreement.

After courteously providing even an extra month or so to the Plaintiff and his attorney, Counsel for the Defendants reached out again to Plaintiff's Counsel on September 23, 2024 regarding the status of the settlement agreement. *See* September 2024 email exchange "Riedel/WVU – Settlement," attached hereto as **Exhibit 4**. In response, the Plaintiff's attorney contacted Counsel for the Defendants and advised they were not backing out of the deal. Then, on October 15, 2024, without any further communication from Plaintiff's counsel, counsel for Defendants received, via ECF filing, a copy of Plaintiff's letter to this Honorable Court seemingly trying to back out of the parties' mutual agreement and, for the first time after more than six (6) months, claiming that he "never agreed to a set of settlement terms" and that his preference is to "have the court determine the outcome of the case rather than a settlement." (ECF No. 49).

## II.   STANDARD OF REVIEW

As this Court is well-aware, "[a] settlement agreement is considered to be a contract." *Sadighi v. Daghighfekr*, 66 F. Supp. 2d 752, 759 (D.S.C. 1999) (*citing United States v. ITT Continental Baking Co.*, 420 U.S. 233, 238, 95 S. Ct. 926 (1975)). As this Court also knows, "District courts have inherent authority ... to enforce settlement agreements." *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). In fact, "[a] strong policy of the Fourth Circuit is to foster settlement in order to advantage the parties and to conserve scarce judicial

resources." *McDermitt*, 34 F. Supp. 2d at 399 (*citing Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993)). In order to enforce such a settlement, the Court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540-41. "A settlement agreement is a contract governed by fundamental principles of contract law. As such, the settlement agreement comes into being as soon as an offer, acceptance, and consideration are exchanged." *U.S. ex rel. McDermitt, Inc. v. Centex-Simpson Const. Co., Inc.*, 34 F. Supp. 2d 397, 399 (N.D. W. Va. 1999) (Broadwater, J.), *affirmed* 203 F.3d 824 (4th Cir. 2002). As this Circuit has made plain, having second thoughts about the results of a valid settlement does not justify setting aside an otherwise valid agreement, and the fact that the agreement is not in writing does not render it unenforceable. *Hensley*, 277 F.3d at 540 (citations omitted).

Moreover, "[i]t is generally accepted that when a client retains an attorney to represent him in litigation, absent an express agreement to the contrary, the attorney has implied authority to conduct the litigation and to negotiate its resolution." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 229-30 (4th Cir. 1996). The law of West Virginia – the state in which this settlement agreement was made – is not to the contrary. *See Humphreys v. Chrysler Motors Corp.*, 184 W. Va. 30, 399 S.E.2d 60, 62 (1990) (per curiam); *Dwight v. Hazlett*, 107 W. Va. 192, 147 S.E. 877, 879 (1929). In West Virginia, "[w]hen an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to clearly show the want of authority." Syl. Pt. 1, *Miranosky v. Parson*, 161 S.E.2d 665, 125 W. Va. 241 (1968). *See also, Messer v. Huntington Anesthesia Group, Inc.*, 664 S.E.2d 751, 761, 222 W. Va. 410, 420 (2008) ("[A] clear showing [is] necessary to overcome the presumption of [an attorney's] apparent authority to bind his clients to [a] settlement agreement.").

## III. ARGUMENT

### A. *The Fact of Settlement and Its Material Terms Are Clear in This Case.*

This Court may summarily enforce settlement agreements when their existence and material terms are evident. The Fourth Circuit has explained:

> If an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is "comparatively insubstantial."

*Hensley*, 277 F.3d at 540. "For example, when parties have agreed to a settlement that was reduced to terms of dollars and cents, the district court has the power and authority to enforce payment of that amount and should not set aside the agreement absent substantial unfairness." *McDermitt*, 34 F. Supp. 2d at 399.

In *McDermitt*, the parties verbally agreed to settle their respective claims by the defendant paying $217,500 in exchange for plaintiff settling and releasing all of its claims. *Id.* at 398. The defendant subsequently drafted "a standard settlement agreement and release … [that] included a standard release clause and a standard confidentiality clause." The plaintiff subsequently refused to sign the agreement "unless the confidentiality and release provisions, as drafted, were removed." *Id.*[1] The Court enforced the parties' settlement, citing, in support, multiple cases enforcing oral agreements where the parties had agreed on the amount, but one party subsequently "contest[ed] ancillary terms of the agreement," such as "a confidentiality provision" or "language regarding tax

---

[1] The dispute over the language of the release provision related to whether the language covered "one relatively small pending claim [that] was specifically excepted from the settlement." *Id.* at 398.

treatment of the settlement sum." *Id.* at 400. (*citing Wilson v. Wilson*, 46 F.3d 660 (7th Cir. 1995); *Sheng v. Starkey Labs Inc.*, 117 F.3d 1081 (8th Cir. 1997)).

In this case, it is undisputed that consent by both parties was provided as to the core terms of the settlement between them. Specifically, the parties agreed to a settlement on April 8, 2024, in which a sum certain would be paid in exchange for a general release of all claims and dismissal of the Second Amended Complaint, with prejudice. Even beyond the sum certain and the release, other core terms (confidentiality, no re-hire, mutual non-disparagement, to name just a few) were memorialized and agreed-to by the separate representatives of all the parties in the exact same communication. Thus, the terms of the within settlement are clear and unambiguous in view of the April 8-9, 2024 e-mail communications between the parties and Mediator Dalesio. *See* Ex. 1.

Further, it should be noted that Plaintiff, in his correspondence to this Court, does not indicate at any point that he did not agree with the sum certain agreed upon to resolve the matter. *See* ECF No. 49. Instead, it appears that Plaintiff's contention lies with the ancillary terms included in the written settlement agreement. *Id.* This, alone, is not sufficient to set aside the agreement reached. See *McDermitt*, 34 F.Supp.2d at 400. (*citing Wilson v. Wilson*, 46 F.3d 660 (7th Cir. 1995); *Sheng v. Starkey Labs Inc.*, 117 F.3d 1081 (8th Cir. 1997)). Accordingly, the Defendants in this matter request that the Court recognize and enforce the settlement between the parties.

B. *Plaintiff's Counsel Had Apparent Authority to Settle on Behalf of the Plaintiff.*

Notwithstanding the Plaintiff's apparent attempt to disavow reaching any agreement with the Defendants, the settlement reached is still enforceable under the apparent authority of Plaintiff's counsel. West Virginia law has long recognized the doctrine of apparent authority. *See generally, General Electric Credit Corp. v. Fields*, 148 W. Va. 176, 133 S.E.2d 780 (1963). Evidence supporting the existence of apparent authority includes communications, statements or

other manifestations of the principal's consent. *Clint Hurt & Assoc. v. Rare Earth Energy*, 198 W. Va. 320, 480 S.E.2d 529 (1986).

Where an attorney-client relationship exists, apparent authority of the attorney to represent his or her client is presumed. *Miranosky v. Parsons*, 152 W. Va. 241, 161 S.E.2d 665 (1968). Indeed, when an attorney appears on behalf his or her client, there is a strong presumption of that authority, such that the burden is upon the party denying the authority to clearly show the want of authority. *Id.*

Without question, Riedel's counsel acted on behalf of the Plaintiff both throughout the entirety at the mediation when a full day of negotiation took place, and in agreeing thereafter to resolve the Plaintiff's claims against the Defendants and confirming the terms of the settlement agreement with Counsel for the Defendants and the mediator in a written communication on April 8, 2024. *See* Ex. 1. At all times, the Plaintiffs attorney exhibited apparent authority to conclude the litigation between Plaintiff and the Defendants, and as a result, the Defendants acted in good faith and reliance on this authority. Accordingly, the Defendants are entitled to rely upon the settlement communications of Plaintiff's counsel as being cloaked in apparent authority, such that the underlying settlement requires enforcement. *See Sanson v. Brandywine Homes, Inc.*, 215 W. Va. 307, 599 S.E.2d 730 (2004) (court enforced settlement even though plaintiffs contended they did not authorize their attorney to settle); *see also Messer v. Huntington Anesthesia Group, Inc.*, 664 S.E.2d 751, 222 W. Va. 410 (2008) (party entitled to enforcement of settlement as it acted in good faith and exercised reasonable prudence in relying upon the apparent authority of counsel for the other party); *but see Hensley, supra*, 541 fn\* (absent an express agreement between an attorney and client, an attorney's implied authority is limited to negotiating a settlement and not agreeing to it).

8

Here, the April 8, 2024 and April 9, 2024 e-mail confirmation between the parties respective counsel and the mediator demonstrates the plain and agreed-upon facts and the terms of the settlement, and further support the conclusion that Plaintiff's lawyer consulted with Plaintiff and that Plaintiff approved the settlement. Thus, under the recognized doctrine of apparent authority, there exists another proper basis for this Court to enforce the underlying settlement.

Moreover, it strains credibility for the Plaintiff to individually contend now, for the first time after six (6) whole months, that he supposedly didn't even agree to the core terms – including the sum certain and release, among several others – and that there's supposedly no settlement as a result. The reality is that any heartburn he may have is either second thoughts, sour grapes, or merely over ancillary terms – things which aren't in this Circuit or this Court nearly enough to undermine the lawful agreement the parties reached together on April 8, 2024 and April 9, 2024.

C. *This Court Should Require Plaintiff to Execute the Settlement and Release Agreement.*

District Courts in the Fourth Circuit have enforced settlements by requiring the recalcitrant party to execute the necessary documents that memorialize the agreements. For example, in *Schott Corp. v. The American Ins. Co.*, No. CIV A 604-0191, 2006 WL 2988460, at *4 (S.D. W. Va. 2006), Judge Faber granted the plaintiff's motion to enforce a settlement agreement and directed the parties "to draft and execute a Settlement Agreement and Release that conforms with the terms of their settlement agreement …" *See also North Carolina Fox and Hound, Inc. v. Saul Subsidiary I Limited Partnership, Chick-Fil-A, Inc.*, 367 F. Supp. 2d 932, 945 (M.D. N.C. 2005) (Magistrate recommendation that the party "be ordered to sign the Proposed Settlement Agreement" attached as an exhibit to the pleadings relating to the motion to enforce). In the present case, this Court should require Plaintiff to execute the Settlement Agreement and Release which was first provided

9

to his Counsel back in April in its existing form, and dismiss his Second Amended Complaint & this lawsuit against the Defendants, with prejudice.

### IV. REQUEST FOR RELIEF

WHEREFORE, for the reasons stated herein, Defendants, West Virginia University Board of Governors and Michael Schaller, respectfully request entry of an Order granting the instant Motion and requiring Plaintiff to execute the Settlement Agreement and Release, and an award of their attorney fees and costs in pursuit of this Motion. If the Court deems a hearing necessary in connection with this Motion, the Defendants ask that one be set as soon as possible, considering the time that has already elapsed while they had been waiting in good-faith reliance on the Plaintiff thinking they had a deal for the last six (6) months. The Defendants also request that if the Court wishes to hear particular testimony at any such hearing, it advise the parties accordingly so they can ensure that the necessary individuals will appear.[2]

/s/ Mario R. Bordogna
Mario R. Bordogna (WV Bar No. 9491)
Bowles Rice LLP
125 Granville Square, Suite 400
Morgantown, WV 26505
T: 304-285-2500
Mario.Bordogna@bowlesrice.com

Lindsay M. Gainer (WV Bar No. 12046)
Bowles Rice LLP
Charleston, WV 25325
T: 304-347-1128
lgainer@bowlesrice.com

*Counsel for Defendants West Virginia University Board of Governors and Michael Schaller, Ph.D.*

---

[2] The Defendants, of course, are happy to present to the Court for an in-camera review at any scheduled hearing a copy of the Settlement Agreement and Release which was presented in this case, if the Court so desires.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

HEIMO RIEDEL,

      Plaintiff,

v.                                                                          Civil Action No. 1:22-CV-155 (Kleeh)

WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS, for and on behalf of
WEST VIRGINIA UNIVERSITY, and
MICHAEL SCHALLER, Ph.D., Individually,
      Defendants.

## CERTIFICATE OF SERVICE

    I hereby certify that on the 29th day of October 2024, I served the foregoing "***Defendants' Motion to Enforce Settlement***" by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

David M. Grunau, Esq.
244 Pleasant Street
Morgantown, West Virginia 26505
*Counsel for Plaintiff*

                                    */s/ Mario R. Bordogna*
                                    Mario R. Bordogna (WV Bar No. 9491)