```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**HEIMO RIEDEL,**

      **Plaintiff,**

  **v.**                          **CIVIL NO. 1:22-CV-155**
                                                                   **(KLEEH)**

**WEST VIRGINIA UNIVERSITY**
**BOARD OF GOVERNORS and**
**MICHAEL SCHALLER, PH.D.,**

      **Defendants.**

## ORDER GRANTING MOTION TO ENFORCE SETTLEMENT [ECF NO. 50]

Pending begore the Court is Defendants' motion to enforce settlement [ECF No. 50]. For the reasons discussed below, after considering the full record, the motion is **GRANTED**.

### I.   PROCEDURAL HISTORY

In this case, originally filed in the Circuit Court of Monongalia County, West Virginia, Plaintiff Heimo Riedel ("Riedel") brought a number of employment claims against the Defendants, the West Virginia University Board of Governors and Michael Schaller ("Defendants").[1] On December 15, 2022, Defendants removed the case to this Court. On March 29, 2024, the parties participated in a day-long mediation session. On April 11, 2024, after additional negotiation, the mediator filed a report

---

[1] Plaintiff asserts claims of state and federal constitutional rights violations, retaliatory and wrongful discharge, abuse of process, and negligence.

indicating that the case had settled [ECF No. 47]. The same day, the Court entered a dismissal order, which stated that the case could be reopened within 90 days for good cause shown [ECF No. 48].

On October 15, 2024, Riedel filed a pro se letter with the Court [ECF No. 49]. In the letter, Riedel states that he never agreed to the settlement terms. On October 29, 2024, Defendants filed a motion to enforce the settlement [ECF No. 50]. Defendants take the position that Riedel agreed to the settlement via the apparent authority of his counsel, David Grunau ("Grunau"). On November 7, 2024, Riedel filed another pro se letter [ECF No. 51]. On February 4, 2025, Defendants filed supplemental authority in support of their motion [ECF No. 55]. On February 9, 2025, Grunau filed a response [ECF No. 56]. In it, he indicates his belief that the case has settled. Grunau writes that Riedel agreed to the settlement sum and expressed concern to Grunau about the non-disparagement clause, but Riedel never indicated that a non-disparagement clause was a dealbreaker. Between February 10 and February 14, 2025, both Riedel and Grunau filed additional documents [ECF Nos. 57, 58, 59, 62]. On February 13, 2025, the Court held a hearing on the motion to enforce settlement. During the hearing, the Court indicated that it would grant the motion.

## II. FACTUAL BACKGROUND

On April 8, 2024, the mediator sent the attorneys for each side an email stating the following:

> Mario and David – Please allow this email to confirm the terms of the settlement of this claim as follows:
>
> 1. Agreed upon settlement amount of $250,000 to be designated as 1099 income, with Plaintiff's attorney fees and costs to be taken from that amount;
>
> 2. Settlement amount and terms will be mutually confidential to the extent permitted by law;
>
> 3. Plaintiff agrees to no re-hire and no re-application;
>
> 4. Plaintiff agrees to voluntarily dismiss Defendant Schaller, individually, with prejudice, before and as a condition of WVU's execution of the settlement agreement and dismissal;
>
> 5. Following execution of the settlement agreement, submission of an Agreed Dismissal Order to the Court, with prejudice;
>
> 6. Mediation fees/expenses split equally (50/50);
>
> 7. No admission of liability and mutual non-disparagement; and
>
> 8. Plaintiff will execute a full and final general release of all claims contained in a complete settlement agreement. The agreement will include the terms in this statement, 1-7 inclusive, in addition to more detailed terms commonly accepted and

>           general      [sic]      used      in
>           employment/wrongful    discharge    claim
>           settlements.

Exh. 1, Defs. Mot., ECF No. 50-1. The same day, Grunau responded to the email, "Received and in agreement to the terms contained therein." Id. The following day, counsel for Defendants responded, "I concur. Thanks, Steve." Id. Riedel, however, has refused to sign the memorialized settlement agreement and release.

### III. DISCUSSION

For the reasons discussed, the Court finds that the settlement agreement should be enforced.

**A.   Counsel for Riedel had apparent authority to settle on Riedel's behalf.**

West Virginia law has long recognized the doctrine of apparent authority:

> [O]ne who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in the exercise of reasonable prudence, is estopped to deny the agency relationship.

All Med, LLC v. Randolph Eng'g Co., Inc., 723 S.E.2d 864, 871 (W. Va. 2012) (citing Syl. Pt. 1, Gen. Elec. Credit Corp. v. Fields, 133 S.E.2d 780 (W. Va. 1963)). Evidence supporting the existence of apparent authority includes "statements, conduct, . . . or other manifestations of the principal's consent[.]" Clint

**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT [ECF NO. 50]**

Hurt & Assocs. v. Rare Earth Energy, 480 S.E.2d 529, 536 (W. Va. 1986).

In West Virginia, "[w]hen an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to clearly show the want of authority." Syl. Pt. 1, Miranosky v. Parson, 161 S.E.2d 665, 667 (W. Va. 1968). A clear showing is necessary to overcome the presumption of an attorney's apparent authority to bind his clients to a settlement agreement. Messer v. Huntington Anesthesia Grp., Inc., 664 S.E.2d 751, 761 (W. Va. 2008). "It is generally accepted that when a client retains an attorney to represent him in litigation, absent an express agreement to the contrary, the attorney has implied authority to conduct the litigation and to negotiate its resolution." Auvil v. Grafton Homes, Inc., 92 F.3d 226, 229-30 (4th Cir. 1996).

The Court agrees with Defendants that Grunau, as counsel for Riedel, had apparent authority to bind Riedel to a settlement agreement. Grunau acted on behalf of Riedel during the entire pendency of this case in federal court, throughout a full day of mediation, and in responding to the mediator's email to confirm the terms of the settlement agreement. Grunau indicated on the record that Riedel did not ask to terminate Grunau as his counsel

until after the motion to enforce settlement was filed. Reviewing the record, the Court finds that Riedel has not overcome the presumption that Grunau was acting with apparent authority when he agreed to settlement terms on April 8, 2024. Defendants are correct that they are entitled to rely upon Grunau's communications as being cloaked in apparent authority, such that the settlement agreement requires enforcement.

### B. Counsel's agreement to the mediator's proposed terms constitutes a valid and enforceable contract.

"A settlement agreement is considered to be a contract." Sadighi v. Daghighfekr, 66 F. Supp. 2d 752, 759 (D.S.C. 1999) (citing United States v. ITT Continental Baking Co., 420 U.S. 233, 238 (1975)). "[D]istrict courts have inherent authority . . . to enforce settlement agreements." Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002) (citation omitted). "A strong policy of the Fourth Circuit is to foster settlement in order to advantage the parties and to conserve scarce judicial resources." United States ex rel. McDermitt, Inc. v. Centex-Simpson Constr. Co., Inc., 34 F. Supp. 2d 397, 399 (N.D.W. Va. 1999) (citing Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177 (4th Cir. 1993)).

In order to enforce a settlement, the Court "(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." Hensley, 277 F.3d at 540-

41. Having second thoughts about the results of a valid settlement does not justify setting aside an otherwise valid agreement, and the fact that the agreement is not in writing does not render it unenforceable. Id. The West Virginia Intermediate Court of Appeals recently reaffirmed the concept that "a settlement between parties can be reached by communications between counsel even when a party does not sign a written agreement." McDowell v. Allstate Vehicle & Prop. Ins. Co., No. 23-ICA-406 (Oct. 28, 2024) (citing Donahue v. Mammoth Restoration & Cleaning, 874 S.E.2d 1, 7–8 (W. Va. 2022)). As the Fourth Circuit has explained,

> If an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is "comparatively insubstantial."

Hensley, 277 F.3d at 540.

In McDermitt, the parties verbally agreed to settle their respective claims. McDermitt, 34 F. Supp. 2d at 398. The defendant agreed to pay $217,500, and the plaintiff agreed to release all of its claims. Id. The defendant subsequently drafted "a standard settlement agreement and release," which "included a standard release clause and a standard confidentiality clause." Id. The plaintiff then refused to sign the agreement "unless the confidentiality and release provisions, as drafted, were removed."

Id.  The court enforced the parties' settlement.  Id. at 400 (citing cases enforcing oral agreements where the parties had agreed on the amount, but one party subsequently "contest[ed] ancillary terms of the agreement," such as "a confidentiality provision" or "language regarding tax treatment of the settlement sum").

Here, the Court agrees with Defendants that the parties reached a settlement agreement on April 9, 2024, when they had both agreed to the terms proposed by the mediator.  By the terms, a sum certain would be paid in exchange for a general release of all claims and dismissal of the Second Amended Complaint with prejudice.  Even beyond the sum certain and the release, other core terms (confidentiality, no re-hire, non-disparagement, and more) were memorialized and agreed to in the same communications. The email confirmations demonstrate the plain and agreed-upon facts and terms of the settlement and compel the conclusion that the agreement is enforceable.

### C. Riedel is required to execute the settlement agreement and release.

District courts in the Fourth Circuit have enforced settlements by requiring the recalcitrant party to execute the necessary documents that memorialize the agreements. For example, in Schott Corp. v. Am. Ins. Co., No. 6:04-0191, 2006 WL 2988460,

at *4 (S.D.W. Va. Oct. 17, 2006), Judge Faber granted the plaintiff's motion to enforce a settlement agreement, directing the parties "to draft and execute a Settlement Agreement and Release that conforms with the terms of their settlement agreement . . . ." The Court, therefore, finds it appropriate to do the same here. Riedel is **ORDERED** to sign the settlement agreement and release on or before **February 24, 2025**.[2]

## IV.  CONCLUSION

For the reasons discussed above, the motion to enforce settlement is **GRANTED** [ECF No. 50], and Riedel is **ORDERED** to sign the settlement agreement and release on or before **February 24, 2025.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record by email and to Riedel by certified mail, return receipt requested.

DATED: February 14, 2025

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

---

[2] During the hearing on February 13, 2025, the Court ordered Riedel to sign the release within ten days. The Court notes that February 23, 2025, is a Sunday, and the Court will allow Riedel to sign the release on or before February 24, 2025.